**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RHAMIN TURNER | : | |
| | : | |
| Appellant | : | No. 491 MDA 2021 |

Appeal from the PCRA Order Entered March 25, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000937-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RHAMIN ANTHONY TURNER | : | |
| | : | |
| Appellant | : | No. 492 MDA 2021 |

Appeal from the PCRA Order Entered March 25, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0001044-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RHAMIN A TURNER | : | |
| | : | |
| Appellant | : | No. 567 MDA 2021 |

Appeal from the PCRA Order Entered March 25, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000496-2017

J-S30029-21

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED: JANUARY 28, 2022**

In these consolidated appeals,[1] Rhamin Anthony Turner (Appellant) appeals from the orders entered in the Lancaster County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[2]  Appellant seeks relief from the judgment of sentence imposed following his jury convictions of three counts each of possession with intent to deliver cocaine (PWID) and criminal use of a communication facility,[3] for his participation in three, separate controlled drug sales to a confidential informant, accompanied by an undercover police officer.  On appeal, Appellant contends the PCRA court erred in denying his claims asserting the ineffective assistance of trial counsel for calling him to testify at a pretrial hearing without proper preparation, and calling him to testify at trial when his testimony was inconsistent and corroborated the Commonwealth's evidence.  For the reasons below, we affirm.

The trial court detailed the testimony presented at Appellant's jury trial in its June 29, 2018, opinion, which was filed in response to Appellant's direct appeal.  **See** Trial Ct. Op., 6/29/18, at 12-20.  For purposes of this appeal,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated these appeals *sua sponte* by order entered May 12, 2021.

[2] **See** 42 Pa.C.S. §§ 9541-9546.

[3] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 7512(a).

- 2 -

we summarize the following. Lancaster County Police Officer Jared Snader, an experienced narcotics officer, was working undercover with a confidential informant (CI) between April and June of 2016. On April 29, 2016, the CI placed a telephone call to an individual known as "Pop" and arranged to purchase cocaine at the Giant Store in Stone Mill Plaza. The call was on speakerphone so that Officer Snader could hear the conversation. At the arranged time, a green Nissan Altima arrived and parked several spaces from the officer's vehicle. Officer Snader provided the CI with $60 to purchase the drugs. The CI proceeded to the Altima and entered the passenger side for a short period. The CI then returned to the officer's unmarked vehicle and turned over a baggie of crack cocaine. *See id.* at 12-14. As Officer Snader was leaving the area, he observed the driver of the Altima walking toward the Giant store, and "got a clear look at" him. *Id.* at 14. The officer later identified the individual as Appellant. Further investigation revealed the Altima was owned by Appellant's wife, with whom he resided. *Id.*

On May 12, 2016, Officer Snader and the CI once again arranged to purchase $60 worth of cocaine from "Pop." This time, however, they met at Edward Hand Middle School. Upon their arrival, Officer Snader observed a silver Jaguar XJ8 in the parking lot, and parked his vehicle two spaces from the Jaguar. He identified the driver of the Jaguar as Appellant. Appellant approached the officer's vehicle on the front passenger side and the CI gave Appellant $60. In exchange, Appellant handed the CI a red solo cup with a balled up napkin inside, secreting crack cocaine. Appellant mentioned to the

officer and CI that he was a coach at the school. Further investigation revealed the Jaguar was owned by Appellant's mother-in-law. *See* Trial Ct. Op., 6/29/18, at 14-15.

On June 2, 2016, Officer Snader and the CI conducted a third controlled purchase of crack cocaine from "Pop." They arranged to meet at the Gas Mart on the corner of Columbia Avenue and Orange Street. After the officer and CI arrived, Appellant arrived in the green Nissan Altima. He was the driver and only occupant. The CI approached the driver's side window with $60. Officer Snader observed the CI reach toward the vehicle, but did not witness a hand to hand transaction. The CI, however, returned to the officer's vehicle with crack cocaine. *See* Trial Ct. Op., 6/29/18, at 15.

In December 2016 and January 2017, Appellant was charged with PWID and criminal use of a communication facility under three, separate dockets: (1) Trial Court Docket No. CP-36-CR-000496-2017 (Docket 496-2017) for the June 2nd controlled purchase; (2) Trial Court Docket No. CP-36-CR-000937-2017 (Docket 937-2017), for the May 12th transaction; and (3) Trial Court Docket No. CP-36-CR-0001044-2017 (Docket 1044-2017), for the April 29th controlled buy. The cases were consolidated for trial.

On August 29, 2017, Appellant filed an omnibus pretrial motion seeking, *inter alia*, disclosure of the identity of the CI. *See* Appellant's Omnibus Pretrial Motion, 8/29/17, at 1-3 (unpaginated). The trial court conducted an evidentiary hearing on September 14, 2017, at which time Appellant's counsel, Attorney Michael V. Marinaro, Esq., attempted to call the affiant to

the stand. *See* N.T. Evidentiary H'rg, 9/14/17, at 3. The Commonwealth objected, asserting Appellant failed to meet his burden of "materiality[,]" that is, demonstrating there was a mistaken identity beyond mere allegations. *See id.* at 3-4. In response, Attorney Marinaro called Appellant to the stand. During his testimony, Appellant denied any involvement in the drug sales. *See id.* at 5-7. However, relevant to the claims raised herein, Appellant made several statements which corroborated the Commonwealth's evidence.

First, when asked if he goes by the nickname "Pops," Appellant initially responded that his "name is Rhamin Turner" and his grandchildren called him "Pop-Pop." N.T., Evidentiary H'rg, at 10. Upon cross-examination, however, the Commonwealth confronted Appellant with comments on his Facebook page, which referred to him as "Pop." *Id.* at 14-15. He then admitted that some people call him "Pop." *Id.* at 15-16. Appellant also acknowledged under cross-examination that he coaches kids at Hand Middle School. *Id.* at 16. However, he denied that he ever drives his mother-in-law's Jaguar. *Id.* at 17.

The trial court denied Appellant's motion the next day. The case proceeded to a two-day jury trial commencing on October 23, 2017. In addition to the testimony of Officer Snader, summarized above, the Commonwealth presented the testimony of several other officers who participated in the surveillance of the transaction, one of whom identified Appellant as the subject in the April 29th transaction. *See* Trial Ct. Op., 6/29/18, at 16-19; N.T., 10/23/17, at 133-34.

Appellant's wife testified on his behalf, and acknowledged that she owns a Nissan Altima and her mother owns a Jaguar. *See* Trial Ct. Op., 6/29/18, at 19. However, she stated that there were several people in their home, including Appellant's 26-year-old son, who could drive either of the vehicles. *Id.* Appellant also testified in his own defense and denied he ever sold drugs, or was at any of the locations at the time of the drug sales. *Id.* He conceded, however, that he did coach youth basketball at Hand Middle School, and "everyone from his neighborhood is called 'Pop' because it is cultural." *Id.* at 19-20.

On October 24, 2017, the jury convicted him of all charges. Appellant was sentenced on April 19, 2018, to an aggregate term of 5 1/2 to 11 years' imprisonment.[4] Appellant filed a timely direct appeal challenging the trial court's denial of his pretrial motion to produce the CI and the sufficiency of the evidence supporting his convictions. *See Commonwealth v. Turner*, 726 MDA 2018 (unpub. memo. at 2) (Pa. Super. filed 3/1/19). This Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for *allocatur* review. *See Commonwealth v. Turner*, 189 MAL 2019 (Pa. filed 9/11/19).

On December 24, 2019, Appellant, represented by Heather A. Reiner, Esq., filed the present, timely PCRA petition, asserting Attorney Marinaro's

---

[4] Attorney Jack McMahon, Esquire, entered his appearance on Appellant's behalf prior to the sentencing hearing, and continued to represent Appellant throughout his direct appeal.

ineffectiveness for: (1) calling Appellant to testify at the pretrial hearing without preparation or notice; (2) calling Appellant to testify at trial without preparation or review of his prior testimony; and (3) calling Appellant's wife to testify at trial without preparation. **See** Appellant's Motion for Post-Conviction Collateral Relief, 12/24/19, at 2 (unpaginated). The PCRA court conducted an evidentiary hearing on November 16, 2020, at which both Appellant and Attorney Marinaro testified.[5]

Appellant insisted he was not prepared to testify at either the evidentiary hearing or trial. **See** N.T. PCRA H'rg, 11/16/20, at 8-9, 14-15. He stated that, at the evidentiary hearing, he "lied at first and afterwards told the truth[,]" regarding the fact that some people called him "Pop," he coached at the middle school, and that he drove his wife's car. **Id.** at 17. He claimed that if he was prepared prior to the evidentiary hearing, he would have "told the truth from the beginning." **Id.** at 16. With regard to his trial testimony, Appellant claimed Attorney Marinaro did not discuss his testimony with him, and that he "didn't expect to testify [or] want to testify[.]" **Id.** at 12, 14-15. When asked how he would have testified differently, Appellant responded: "I don't think I would have went to trial if everything would have been laid out." **Id.** at 16.

---

[5] Appellant presented no testimony concerning his third claim, that counsel failed to adequately prepare his wife to testify at trial. Thus, the PCRA court determined Appellant had waived that issue. **See** PCRA Ct. Op., 3/25/21, at 8. We note Appellant did not include that claim on appeal.

Attorney Marinaro testified that Appellant wanted to testify at trial and "tell his side of the story[,]" and counsel agreed he should testify. N.T., PCRA H'rg, at 25, 33, 43-44. *See id.* at 43 (explaining Appellant "didn't have any *crimen falsi* offenses[ and t]here were a lot of positives in having him take the stand"). Attorney Marinaro insisted they reviewed the Commonwealth's evidence and "discussed . . . how [they] should prepare to testify." *Id.* at 30, 32. With regard to whether he prepared Appellant to testify at the evidentiary hearing, Attorney Marinaro provided generalized responses to the question, stating they "talked many times" and he "found [Appellant] to be very personable." *Id.* at 21.

Thereafter, on March 25, 2021, the PCRA court entered an order and opinion denying Appellant relief. These timely appeals follow.[6]

In his consolidated brief on appeal, Appellant raises two claims asserting the ineffective assistance of trial counsel:

---

[6] Appellant filed three, separate notices of appeal — one at each trial court docket — in compliance with the Supreme Court's directive in **Commonwealth v. Walker**,185 A.3d 969, 977 (Pa. 2018) (separate notices of appeal must be filed when a single order resolves issues arising on more than one trial court docket), *overruled in part*, **Commonwealth v. Young**, ___ A.3d ___, ___, 2021 WL 6062566, *1 (Pa. Dec. 22, 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed).

Appellant also complied with the PCRA court's orders, entered at each docket, and filed three, timely Pa.R.A.P. 1925(b) statements of errors complained of on appeal.

[1.] [Was Attorney Marinaro] ineffective for calling [Appellant] to testify without preparation at an evidentiary hearing on September 4, 2017[?]

[2.] [Was Attorney Marinaro] ineffective for calling [Appellant] to testify at trial because [Appellant's] testimony was inconsistent and only served to corroborate the Commonwealth's evidence[?]

Appellant's Brief at 4.

Our standard of review of an order denying PCRA relief is well-established: "[W]e determine whether the ruling of the PCRA court is supported by the record and is free of legal error." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020).

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*.

***Id.*** (citation omitted).

Where, as here, the petitioner asserts a claim of ineffective assistance of counsel, we are guided by the following:

> To prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements[:] (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. With regard to the second, reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a

potential for success substantially greater than the course actually pursued." To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective."

***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127–28 (Pa. 2011) (citations omitted). Furthermore, "[a] failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Webb***, 236 A.3d at 1176.

Because Appellant's claims are related, we address them together. First, Appellant argues Attorney Marinaro provided ineffective assistance when he called Appellant to testify — absent any preparation — at the September 14, 2017, evidentiary hearing on his motion to compel production of the CI. Appellant's Brief at 12. He insists that when Attorney Marinaro called the affiant to the stand, and the Commonwealth objected, counsel "panicked and instead called [Appellant, who] was caught off guard and wholly unprepared to testify." ***Id.*** Appellant contends his testimony "did nothing but corroborate the Commonwealth's case and go against all of [Appellant's] best interests." ***Id.*** at 14. Specifically, he cites to the trial court's June 29, 2018, direct appeal opinion which set forth the following corroborating evidence presented at the September 14th hearing: (1) the Commonwealth introduced Facebook postings, which established "many people referred to [Appellant] as 'Pop[;]'" (2) Appellant conceded his wife owned the green Nissan Altima used by the suspect in two transactions, and his mother-in-law owned the silver Jaguar used in the third transaction; and (3) Appellant admitted he coached youth

- 10 -

sports at Hand Middle School. *Id.* at 13, citing Trial Ct. Op., 6/29/18, at 9. Appellant maintains that "[a]ny reasonable attorney would have reviewed the evidence and [concluded] that [Appellant's] testimony would not contribute to anything except for to bolster the Commonwealth's position." *Id.* at 14. Alternatively, Appellant argues that "the Motion itself lacked any arguable merit" and "had no probability of success." *Id.* at 15.

Second, Appellant argues Attorney Marinaro was ineffective for calling him to testify at trial because his testimony was inconsistent and corroborated the Commonwealth's evidence. *See* Appellant's Brief at 16. Although Attorney Marinaro testified he called Appellant to "look[ ] at the jury and [tell them] he [did not] deliver the drugs[,]" Appellant maintains this did not constitute a reasonable trial strategy because Appellant's testimony actually "bolster[ed] the Commonwealth's evidence." *Id.* at 17. Further, Appellant insists that but for Attorney Marinaro's ineffectiveness, the result of his trial would have been different. *Id.* at 18. He reasons:

> The Commonwealth had unsubstantiated, circumstantial evidence with a dearth of corroborating evidence and many avenues of investigation that were left unpursued. Had [Appellant] not corroborated nearly every aspect of the Commonwealth's case through his testimony, and any of the "litany" of alternative defenses was pursued by counsel, there is a reasonable probability that [Appellant's] defenses would have [been] successful.

*Id.* Accordingly, he argues the PCRA court erred in denying his petition for relief.

Here, the PCRA court found **Appellant's testimony** credible "regarding the preparation leading to, and action taken during," the September 14th

evidentiary hearing. PCRA Ct. Op. at 12. Specifically, the court found that when the Commonwealth objected to the affiant's testimony, Attorney Marinaro "clearly changed his strategy and called [Appellant] to testify instead[,]" but had "never previously discussed this possibility with" Appellant. *Id.* (finding "Attorney Marinaro's testimony regarding this matter was of a vague and generalized nature"). In fact, the PCRA court opined that, in its view, "the motion seeking disclosure of the identity of the confidential informant had little opportunity for success." *Id.* at 14. ("[I]t is resounding clear that any possible benefit in the litigation of [the motion to compel] was outweighed by the potential risks thereof"). Accordingly, the PCRA court determined this claim had arguable merit, and counsel had no reasonable basis for "litigating the motion." *Id.* at 15.

Conversely, with regard to the decision to call Appellant to testify at trial, the PCRA court found that "Attorney Marinaro's testimony [was] credible regarding the preparation leading to the time of trial." PCRA Ct. Op. at 12. Furthermore, the court found counsel's "chosen defense strategy to be reasonable and appropriate" and credited Attorney Marinaro's testimony that Appellant wanted to testify at trial. *Id.* at 13-14; *see Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000) ("The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel."). Thus, the PCRA court concluded Appellant failed to demonstrate that counsel had no reasonable basis for calling him to testify at trial.

Nevertheless, the PCRA court concluded both of Appellant's claims failed the prejudice prong. The court opined:

> In this matter, there existed an abundance of evidence that pointed to [Appellant] as the individual who delivered the cocaine to the [CI] in the charged offenses[ — e]ven if this court were to disregard [Appellant's] admissions regarding the nickname "Pop," the use of the automobiles in question, and the fact that [Appellant] coached basketball at the Edward Hand Middle School.

PCRA Ct. Op. at 16. The PCRA court summarized that relevant evidence: (1) experienced, undercover narcotics Officer Snader worked closely with the CI on all three transactions, and identified Appellant as the person who sold the drugs; (2) another officer who was on surveillance detail for the April 29th transaction, identified Appellant as the suspect; (3) at the first and third transaction, the suspect arrived in a green Nissan Altima, which was owned by Appellant's wife; (4) at the second transaction, the suspect was in a silver Jaguar, that was owned by Appellant's mother-in-law. *See id.* at 16-19. The court further concluded:

> Accordingly, even without any reference to any of the concerning admissions made by [Appellant] during his testimony at the pre-trial hearing, the Commonwealth possessed ample evidence on which to convict [Appellant] of the charged offenses. The court additionally notes that the attorney for the Commonwealth possessed the Facebook postings, which caused [Appellant] to admit that some people refer to him as "Pop." It is unknown to the court whether the Commonwealth would have been unable to authenticate these postings without the admission of [Appellant]. Similarly, the court is without information as to whether the attorney for the Commonwealth would have possessed independent evidence to establish that [Appellant] coached basketball at the Edward Hand Middle School. With respect to the vehicles in question, even absent [Appellant's] admissions, the Commonwealth was able to confirm that the

- 13 -

> vehicles were registered to [Appellant's] wife and mother-in-law and observed the vehicles at [Appellant's] residence.

***Id.*** at 19-20.

Upon our review of the record, the parties' briefs, and the relevant caselaw, we detect no error or abuse of discretion in the PCRA's court's ruling. As explained ***supra***, in order to obtain relief on his ineffectiveness claims, Appellant must establish he was **prejudiced** — that is, he must demonstrate "there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." ***See Chmiel***, 30 A.3d at 1127-28. Moreover, his failure to establish prejudice alone requires us to reject his claim. ***Webb***, 236 A.3d at 1176.

Here, Appellant has not established that the outcome of either the pretrial hearing or trial would have been different had counsel better prepared him to testify or refused to call him at trial. Indeed, Appellant himself insists the motion to produce the CI "had no probability of success." Appellant's Brief at 15. Moreover, when asked how he would have testified differently had counsel prepared him before the hearing, Appellant stated he "would have told the truth from the beginning." N.T., PCRA H'rg, at 16. However, Appellant's "truth" corroborated the Commonwealth's evidence — people in the neighborhood called him "Pop," he sometimes drove his wife's Altima and his mother-in-law's Jaguar, and he coached at Hand Middle School. Thus, better testimonial preparation by counsel would not have resulted in a successful pretrial motion.

Further, to the extent Appellant implies the outcome of his **trial** would have been different had he not tesitifed at the **pretrial hearing**, we disagree. Appellant maintains that had he not "corroborated nearly every aspect of the Commonwealth's case through his testimony," he could have successfully defended the "unsubstantiated, circumstantial evidence" presented by the Commonwealth at trial. *See* Appellant's Brief at 18. However, he fails to explain how he could have done so. Indeed, Officer Snader identified Appellant as the person who sold drugs to the CI on all three occasions, and another officer identified Appellant as the driver of the green Altima at the April 29, 2016, transaction. *See* N.T., 10/23/17, at 77, 81-83, 88, 90-91, 133-34. Further, the police identified the cars used in the three drug sales as a green Altima, owned by Appellant's wife, and a silver Jaguar, owned by his mother-in-law. *Id.* at 77-78, 86. Thus, we agree with the conclusion of the PCRA court that Appellant cannot establish "there is a reasonable likelihood that the outcome of the proceeding would have been different absent the decisions of Attorney Marinaro to have [Appellant] testify at the pretrial hearing and at trial." PCRA Ct. Op. at 20. Accordingly, no relief is warranted.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2022